## JOHN TEMPLE *v.* MOSES SMITH.

A signature may be proved by means of comparison with other documents, signed by the party against whom the proof is to be made, whether such other documents are authentic, or their genuineness is first satisfactorily proved.

This doctrine applies, not only to cases when the instrument to be proved is the immediate basis of the action, but also to cases where the instrument is offered as a matter of evidence upon incidental questions.

The testimony of experts, sworn to give evidence upon the comparison of signatures, should be considered, and acted upon with much caution by a jury, who are not bound to surrender their own opinions, formed by their own comparison, to the opinions of witnesses, however experienced.

APPEAL from the District Court for the Parish of Morehouse. *Sharp*, J. *Parsons* and *Newton*, for plaintiff. When a party denies his signature or his writing, (as in this instance,) it may be proved in three different ways, either

by persons who saw him write it, or by persons who have frequently seen him write and sign his name, or by comparison.  C. P. art. 325.  C. C. 2241.  2 M. R. 212.  3 M. R. 350.  9 L. R. 405.  15 L. R. 173.

Plaintiff could not be restricted to the manner of making the proof, because the latter clause of art. 325, C. P. expressly declares, that the proof by witnesses shall not exclude the proof by experts or comparison.

*McGuire* and *Ray*, for plaintiff.  Comparison of handwritings is one, and a very general mode of proof, in the common law courts.  Greenleaf on Evidence, § 576, says: "All evidence of handwriting, except when the witness saw the document written, is, in its nature, comparison."  But the mode of the witness acquiring the knowledge to enable him to institute the comparison, seems to be the great difficulty.  Two modes of acquiring that knowledge are stated in § 577, to be considered sufficient: both these modes imply a personal knowledge in the witness of the handwriting.  There are two universally admitted exceptions to this rule in § 578, the second of which applies to this case very nearly, as one of the documents used for the comparison, is the bond signed by defendant in this case, to release the attachment.  But the direct question in this case, whether papers irrelevant to the record may be admitted, for the sole purpose of creating a standard of comparison of handwritings, seems to have been very elaborately discussed in the case of *Doe* v. *Stuckermen*, 5 Ad. and El. 703, in which case the King's Bench were equally divided—Lord Denman, C. J., being in favor of receiving them.  Greenleaf, § 581, says: "The American decisions are far from being uniform on this question."  In Massachusetts, Maine and Connecticut, such evidence is uniformly admitted, and, with some restrictions, in many other States.  On this point, we would respectfully refer to the very lucid and able argument of Mr. Evans in his 2d vol. of Pothier, p. 185, and to Lord Denman's argument in the case.  5 Ad. and El. 422 to 429.  4th vol. Hill and Cowens' notes to Philips on Evid. pp. 1330, 1331—authorities from Massachusetts, Connecticut and Louisiana.

There is still another reason why experts should have been appointed in this case.  The document 'A' is evidently an attempt at disguising the real handwriting, and experts are always received to testify whether the writing is a real or feigned hand, and may compare it with other writings already in evidence in the case.  See note 4 to § 580 of Greenleaf on Evid., and the authorities there cited.

*Todd* and *Robinson*, and *Boatner*, for defendant.  We fully concur with the plaintiff's counsel in some of the positions assumed by them, in the argument of their points.  For instance, they state "that document 'A' is not, in the sense of art. 324, C. P., the foundation of the suit, and therefore is not subject to the modes of proof therein specified.  We agree with them further, that article 325, C. P., is an exception to the general rule of evidence, and must be confined to cases to which it clearly applies.  They, however, contend, that article 2241 of the Civil Code, lays down the general rule for proving handwritings and signatures in all cases.  So far from this being the case, the last article referred to is modified and superseded by art. 325, C. P., as was decided in the case of *Plicque* and *Le Beau* v. *LaBranche et al.* 9 L. R. 562.  They therefore must refer to the same class of cases.  And from this, it results, that there is no express provision in either code for the proof of handwriting and signatures, except of such documents as are embraced in the articles referred to.  That is, of such only as form the basis of the action, and where the defendant has been called on expressly to avow or disavow his signature.  Nor has this question been settled by the decisions of this court; all the decisions cited by the counsel applying only to cases where the document to be proved formed the basis of the action, and therefore coming under the rule of the articles referred to.

We must therefore resort to elementary works on evidence, and the decisions of other tribunals, to settle this point; and we think that an examination of these, will satisfy the court that our position is correct.

All the old common law authorities are most decidedly against this mode of proof: it is a mode almost at one time unknown to the common law, and never resorted to in any instance.  The attempt to introduce it under that system, has been comparatively of recent date; but the current of decisions, both in England and this country, is still against its admissibility.  In nearly every State the

common law rule has been adopted, excluding this mode of proof. And we would refer the court to Phillips' Evidence, vol. 1, p. 490, Starkey Ev. p. —— and to the notes on Phillips from page 1326 to 1331, and to the numerous authorities there cited.

If, however, the court should think that proof by comparison was properly allowed in this case, then we contend, that the ruling of the court below was correct, refusing to permit the comparison to be made, either by witnesses or experts, but requiring it to be made by the jury. In all the cases cited by the counsel, where this mode of proof has been allowed, it will be found, that it has been left to the jury to compare the writings, without aid from any other source to assist their judgment. It is the province of the jury, to try the case according to the law and the evidence. They are the real experts, in all matters of fact. The evidence should be placed before them, as were the papers in this case, and they should be permitted to make their own deductions; nor should the mere opinions of any set of men be suffered to go before them as evidence, to affect their decisions. A different rule would bring about the greatest absurdities. It would be, in many cases, constituting a different body to try the case, by whose decision or opinions, the jury were to be entirely controlled, and would amount virtually to a denial of the right of trial by jury.

We think it unnecessary to discuss the second objection raised in the bill of exceptions, marked "I," in regard to the inadmissibility of these papers as a basis of comparison, after the witness had stated that he was acquainted with the handwriting and signature of defendant, and the object of plaintiff being to prove the document "A" to be defendant's handwriting. The acquaintance of witness with the handwriting of defendant, was certainly the best evidence, and they should not have been permitted to decline that, and resort to an inferior grade of evidence.

In regard to the third and last objection, raised in the bill of exceptions last referred to, in regard to the inadmissibility of the document marked "A" under the pleadings, we would simply suggest, that no allegation was made in the petition, charging the defendant with giving a pass to the slave; yet upon the trial, such an instrument was suddenly introduced, and sought to be made, as it were, the basis of the action. We contend, that a distinct charge should have been made in the petition, of the pass having been furnished, in order to have guarded the defendant against surprise, caused by its introduction.

Another bill of exception was taken by plaintiff, against the ruling of the court below, refusing to allow the proposed test of the accuracy of the knowledge of witness *Miller*, in regard to the handwriting of defendant. The reasons assigned by the court for its decision upon this point, are of sufficient force to render any remarks of ours unnecessary. The test was one certainly unknown to the law, and would lead to the inconveniences and absurdities suggested by the court.

By the court:

SLIDELL, J. The petition alleges in substance, that the defendant enticed, harbored, and carried away a slave belonging to the plaintiff, with the intention of depriving him of his property, and claims damages to the amount of the value of the slave. There was a verdict and judgment for the defendant in the court below, and the plaintiff has appealed.

The most material matter to be considered in the present condition of the cause is, the ruling of the district judge on a question of evidence. When the negro was apprehended, after his disappearance from his master's abode, by the officers of a steamboat on board of which he was, a paper purporting to be a pass, signed *Moses Smith*, was in his possession, and was produced by him. It was necessary for plaintiff's case, to prove, that this document was in the handwriting of the defendant. In order to do so, the plaintiff offered in evidence a number of documents satisfactorily proved to be written and signed by the defendant. Two of them are judicial bonds executed by the defendant. One of them was executed in this cause, for the purpose of bonding the property attached; the other in a criminal proceeding against *Smith*, on a charge

of enticing away the slave in question. These documents having been offered in evidence with the permission of the court, which, we think, was properly allowed; the plaintiff then, as the bill of exceptions states, " called the clerk of the court, a person said to be skilled in the knowledge of handwriting, and was proceeding to ask him to compare the handwriting of said documents, with the handwriting of the document called a pass, and to state to the court and jury, whether or not, they were, in his opinion, written by the same hand; to the reception of which evidence, defendant, by his counsel, objected, on the ground, that the law did not permit a party to call witnesses to prove a handwriting by comparison, except in the cases provided for in the article 325 of the Code of Practice, and of the Civil Code, 2241, which objection was sustained by the court."

In support of the ruling of the district judge, the appellee has invoked the general principles of evidence, the opinions of English and American commentators, and the decisions of learned judges in the courts of England, and of our sister States. If we were permitted to decide the question upon these authorities, its investigation would be interesting, and its solution difficult; for there is certainly diversity of opinion, as may be seen by consulting the elaborate note to Mr. Phillips' Treatise on Evidence, ed. of 1843, vol. 4, page 1326 to 1331. No one can peruse, even cursorily, the learned and acute disquisitions which this and kindred questions have elicited, without acknowledging, that the subject is surrounded with difficulties, not only in the abstract, but in reference to practical results in the administration of justice.

But we are not permitted to look to those sources, being of opinion, that the question is settled in the decision of our own courts, based upon our own legislation.

Under the code of 1808, p. 306, art. 226, it is said, " that a signature may be proved by at least one credible witness declaring positively that he knows the signature, as having seen the obligation signed by the person from whom or from whose heirs the payment or execution of it is demanded, and if there be no such deposition, the signature of the person must be ascertained by two persons having skill to judge of handwriting, appointed by the judge before whom the cause is pending, which two persons shall report on oath, whether the signature appear to them to be that of the person whose it is alleged to be, on their having compared it with papers acknowledged to have been signed by him."

By the amendatory code of 1825, the principle of comparison as a means of arriving at truth, was preserved, but with an enlarged applicability. " If the party disavow the signature, or the heirs or other representatives declare, that they do not know it, it must be proved by witnesses or comparison, as in other cases." Art. 2241.

In the subsequently adopted Code of Practice, it is said: " If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name. But the proof by witnesses shall not exclude the proof by experts, or by a comparison of the writing, as established by the Civil Code. Code of Practice, art. 325.

Under the above legislation, we believe it has been a matter of frequent practice to prove signatures by means of comparison with other documents signed

TEMPLE
*v.*
SMITH.

by the party against whom the proof is to be made, whether such other documents are authentic or their genuineness is first satisfactorily proved. The decisions from an early period to the present time, are in harmony with that practice. Thus in a very early case, *Sauvé* v. *Dawson*, 2 M. R. 203, decided in 1812, in order to prove the signature of the defendant to a promissory note, the plaintiff offered an appeal bond, executed by the defendant, as a basis for comparison, and the signature to the note was allowed to be proved by a comparison with the signature to the appeal bond. In *Bell* v. *Norwood*, 7 L. R. 103, the court recognized the right of a party to contradict the testimony of a witness who had sworn positively to the genuineness of a signature, by the testimony of witnesses who had compared it with other documents on file in the cause, although they were of opinion that their negative statements did not outweigh the direct affirmative oath of the first witness, who saw the note signed. In the case of the *City Bank* v. *Foucher*, 9 L. R. 410, the modes of proof provided for by the code are spoken of as not exclusive, but concurrent. In *Plicque* v. *Labranche*, 9 L. R. 522, Judge Martin observes, " proof by comparison of handwriting, or by experts, is admissible where the defendant denies his signature," referring to articles 324 and 325 of the Code of Practice. In *Ball's Administrators* v. *Ball*, 15 L. R. 179, the signatures of an instument not being certified in due form, were permitted by the judge below to be proved by comparison of handwriting with other signatures of the same parties to notarial acts, and the Supreme Court sustained the ruling below, referring to the Civil Code, 2241; Code of Practice, 325; 2 M. R. 203; 3 Ib. 359. See also 19 L. R. 541, *Davis* v. *Police Jury*.

But it is said that the articles of the code refer only to cases where the instrument is the immediate basis of the action, as in the case of a suit upon a promissory note, or bond signed by the defendant, who denies his signature. In this view we do not concur, and it is in opposition to the ruling in *Ball's* case and *Davis'* case already cited. In those cases the documents to be proved were not the immediate basis of the action, but were introduced as matters of evidence upon incidental questions. The reason of the rule of evidence is as strong in one case as in the other.

We are therefore of opinion that the comparison and testimony proposed, as set forth in the bill of exceptions, should have been permitted; but, at the same time, we think it proper to say that such testimony should be considered and acted upon by a jury with much caution, and that they are not bound to surrender their own opinions, formed by their own comparison, to the opinion of witnesses however experienced.

There are some other points to which it is proper to advert, in remanding the cause.

We think the testimony as to the declarations of the negro, were properly rejected on the ground of hearsay.

We are also of opinion that the objection to the admission of certain evidence, upon the ground of the vagueness of the allegations in the petition was properly overruled, the petition, taken as a whole, being sufficiently definite.

We think the court might have appointed experts as requested by the plaintiff, but we are of opinion that their report would not have been conclusive upon the jury, who would only be bound to give their report such weight as they might think it entitled to.

We are of opinion that the attachment should have been dissolved, this being clearly a case of damages claimed *ex delicto*. *Prewitt* v. *Carmichael*, 2 Ann. 943.

It is therefore decreed, that the judgment of the district court be reversed, and that this cause be remanded for a new trial, the defendant to pay the costs of the appeal. It is further decreed, that the attachment issued in this case be dissolved, and that the plaintiff pay the costs of issuing and executing the attachment.