No. 13,021.

W. W. BARLAW ET ALS. VS. JOHN R. R. HARRISON ET AL.

SYLLABUS.

The law presumes against fraud. Where acts are susceptible of two constructions, one consistent with honesty and fair dealing, and the other odious and criminal, the burden of proof is on the one who charges the latter and wishes the court to think that the odious and criminal is true.

In a suit to have an olographic will decreed null, on the ground that it is not in the handwriting of the deceased and is a forgery, the weight of the testimony to justify a judgment annulling the will should make it appear, with some certainty, that the will is a forged paper.

The presumption of regularity and honesty is sustained by the weight of the testimony.

This was the conclusion arrived at by a jury of the vicinage who saw and heard the witnesses, and had special opportunity to judge of their credibility and character. It was adopted by the Supreme Court as the basis of the judgment.

ON APPEAL from the First Judicial District Court for the Parish of Caddo.  *Land, J.*

*J. Henry Shepherd* and *D. T. Land* for Plaintiffs and Appellants.

*T. F. Bell* and *Leonard & Randolph* for Defendants and Appellees.

Argued and submitted January 27, 1899.
Opinion handed down February 6, 1899.
Rehearing refused April 7, 1899.

The opinion of the court was delivered by
BREAUX, J.  This was a suit brought by plaintiffs, collateral heirs of defendant's late wife, against defendant and his second wife, to annul as forged her last will made in the olographic form, also to have decreed null the proceedings leading to and including the judgment attacked for forgery.  The sister of the plaintiffs and wife of the defendant, died in July, 1890, leaving no children.  Their only child, a daughter, died many years ago.  The will attacked was admitted to probate in July, 1891.  In this instrument it appears Mrs. Harrison, since deceased, instituted Dr. John R. R. Harrison, defendant here, her universal legatee.  He is an old man, 75 years next March.  She was about sixty-six years of age at the date of her death, and they had lived together as husband and wife about forty-five years.  During that time the evidence shows they got along together well enough, although as relates to the limited interest of each there does not seem to have been much sympathy between them.  She superintended the few acres of crop, and even, at times, worked in the field and kept her revenues separate from those of her husband, and he, as we take it, was equally as independent with his means.  Two of her brothers resided near.  They, we infer, were not always on friendly terms with their sister and brother-in-law.

In January, 1868, Dr. Harrison to escape the payment of debts, executed a *dation en paiement* to his wife in satisfaction of her asserted paraphernal funds.

There were also introduced original instruments, being a private instrument of transfer or counter-letter from Mrs. N. P. Harrison to the defendant, John R. R. Harrison, dated February 10th, 1868; a sale from Mrs. N. P. Harrison authorized by her husband to Eliza-

beth May, dated November 28th, 1871, being a private act acknowledged before an officer; a promissory note signed N. P. Harrison in favor of John R. R. Harison; act of sale by Mrs. Harrison to Posey, and another act by the same vendor to Denson. The will attacked was introduced, and also another act of sale to one Posey. Plaintiffs affirm that the different acts of sale made in 1871, 1878, 1885 and 1889 are signed by Mrs. Harrison and her husband, John R. R. Harrison, and that the signatures to these acts are genuine and alike, written by the same person, but plaintiffs urge that the counter-letter and transfer dated February 10th, 1868, a private act relied on by defendants, and the promissory note introduced, are not genuine, but forgeries; that the three documents in 1868, 1874 and 1888, i. e., the counter-letter, the note and the will, are written by the same person in favor of defendant John R. R. Harrison, are not genuine, and not signed by witnesses, while the acts bearing the genuine signature of the late Mrs. Harrison are all authentic acts; that there is a marked difference between the signatures to the public act and the private instruments. The plaintiff, through counsel, pointed out in the brief and at bar in what respect there is a difference. After pointing out the difference plaintiffs specially urge that Mrs. Harrison signed her name "N. P. Harrison," and the family record shows that her christian name was "Narissa," while the document, of date June, 1888, introduced by defendant as the last will and testament of Mrs. Harrison, was signed by Narcissus P. Harrison. Oral testimony was introduced to sustain plaintiffs' theory of the case. Opposed to this testimony, defendants introduced a number of witnesses who were as emphatic and positive regarding the genuineness of the will as plaintiffs' witnesses were in testifying to facts and circumstances, going to show that it was not the genuine will of Mrs. Harrison.

The jury returned a verdict for defendant. From the verdict of the jury and the judgment of the court, plaintiffs prosecute this appeal.

There is difference, as contended by plaintiffs, in the signatures to the different acts. If minute distinctions in the signatures and handwriting shall be held as controlling, while carefully examining the different signatures and the handwriting, it may well be that the will would not stand as the genuine will of the late Mrs. Harrison. But signature and handwriting change as one grows older. There is sometimes a marked difference between the signatures of the same person signed at dates not far distant one from the other. Handwriting

✳

changes with increasing years, infirmity and habit.   In view of these changes one not an expert should hesitate upon examination of signatures in pronouncing a signature or handwriting a forgery by comparison without having seen the person write or sign his name, unless there is a marked and conspicuous difference between the genuine signature and the signature evidently not genuine.   This mode of proof is not specially favored by commentators and courts.   "It is worth little."  Best, on Evidence, Section 247.

The opinion of the experts is not, by any means, convincing.   They were bank officers and, doubtless, had reasonable skill in judging of handwriting in their business.   There were mistakes made in identifying signatures.   The result is that their opinion, given in the utmost good faith, is none the less not satisfactory and conclusive.   The two brothers of the testatrix testified that the will is not in the handwriting of their late sister.   Opposed to this, other witnesses who have seen her write and sign her name, recognized the handwriting and the signature as her handwriting and signature.

The fact that the testatrix signed Narcissus P. Harrison, instead of Narcissa P. Harrison, is invoked as strange, and as one of the grounds for which the will should be annulled.

We infer from the acts in evidence that she usually signed only the initials of her name.   It may well be that one signing a solemn act of last will would be prompted to sign at least one of the surnames in full.   Why she signed Narcissus, instead of Narcissa, is one of the perplexing questions here involved.   It may be that being aged when she signed, and seldom signing her name, she thus wrote it under the impression that it was one of her Christian names.

There is testimony of three witnesses going to prove that the name Narcissus was regarded as the proper name of the testatrix.

Plaintiffs charge that it is not reasonable to presume that Harrison, with knowledge that his wife left a will in his favor, would not, shortly after her death, make search for it.   That even after plaintiffs' brothers commenced to trouble him about the property, he did not make a search for the will.

Defendants' position, as we take it, is that he placed reliance upon the counter letter he held, and, in consequence, gave himself no concern about a will.   It does not appear that he had any knowledge of the will, and if there was indifference on his part it would not, in our judgment, give rise to a presumption that he had planned the confec-

tion of a will on being informed that his counter letter was worthless. The facts relating to the finding of the will have a bearing upon the question here involved.

The defendant, Harrison, testified to explain how he found the will. To some extent, at least, his testimony is corroborated by other witnesses. The presumption urged by plaintiffs as arising from the acts which led to the finding of the will, is not, by any means, conclusive. They are, at least, susceptible of two constructions. We adopt the construction of regularity and proper conduct.

As relates to the counter letter, or attempted acknowledgement of the late Mrs. Harrison, made with the view, as sworn to by Harrison, defendant, of protecting him from a *dation en paiement* he executed to shield his property from creditors, signed by her and two witnesses, the testimony presents an issue of the most serious character.

We met with no difficulty in arriving at a conclusion save as to the signature of one of the attesting witnesses, Lewis Everett, who died since. The letter "e" was omitted. We have given attention to the attending circumstances, and it may be after all that this signature is a genuine signature.

The fact is doubtful, but it does not lead to the certain conclusion claimed by the plaintiffs, upon whom is the burden of proof. It may be that this witness left out this letter from his name. The fact unexplained, would not, in our opinion, justify us in reaching the conclusion that it is a forgery. One may negligently sign "Evrett" for "Everett."

Counsel dwelt with energy and clearness upon other grounds of attack against the will. Although each has been carefully considered, we do not in term narrate them, as we think they are covered by the following propositions indicating our conclusion.

The suspicious circumstances charged are, in our view, met by the facts shown that forty-one years defendant Harrison and his late wife lived together as man and wife, on terms so far as the record discloses of sympathy and good will. Years ago they mourned the loss of their only child, aged sixteen years. The testimony should be positive, clear and direct, to give ground enough to find forgery committed or instigated by an old man under the circumstances here; counterfeiting the handwriting and signature of the mother of his only child, while, on the other hand, the plaintiffs, brothers of the late Mrs. Harrison, who

are plaintiffs, one at least, who had received a donation of some value, did not always manifest the regard due by a brother to his sister.

The two brothers, who are plaintiffs in the suit, were in Shreveport when the will was probated, years ago; they had been duly notified, and yet they did not appear before the court to complain of the nullity of the will on the ground which they now urge. 'They are not estopped, nor is their action prescribed, but none the less some significance grows out of the fact that they did not, in court, complain of the wrong of which they had knowledge at the time.

One of the witnesses, upon whose testimony the court acted and probated the will, on the trial swore in direct opposition to his testimony he gave on the application to probate the will and sought to justify his inconsistency as a witness by reason not sustained, but refuted by other testimony.

The jury heard the witnesses, a number testifying in favor of the genuineness of the will and of the other instrument of writing introduced, and others of a different view. They determined that the weight of the testimony sustained their genuineness and validity. Their verdict was sustained by the judgment of the District Court We have found no ground upon which to disturb their verdict.

For reasons assigned the judgment of the District Court is affirmed.