2 So.2d 216

## D'ANGELO v. NICOLOSI.

### No. 34091.

April 28, 1941.

See, also 177 So. 64, 188 La. 326.

Gill & Simon, of New Orleans, Joseph H. Baynard, of Baton Rouge, and J. M. Blache, of Hammond, for appellant.

Rownd & Tycer, of Hammond, for appellees.

ROGERS, Justice.

The plaintiff, Emanuel D'Angelo, sues to recover on two promissory notes for $1,-500 each, made to plaintiff's order, and allegedly signed and endorsed by the defendants, Vincent Nicolosi and Ignazio Nicolosi. The notes are dated May 15, 1932, and are made payable at Hammond, Louisiana, one on May 15, 1933, and the other on May 15, 1934. They bear interest at the rate of 8% per annum from maturity, until paid, and stipulate for 10% attorney's fees if placed in the hands of an attorney for collection after maturity. Defendants denied they signed the notes, and they specifically averred that the notes were forgeries. After hearing the case on the merits, the judge of the district court rendered a judgment in favor of the defendants and against the plaintiff, rejecting plaintiff's demand at his cost. Plaintiff has appealed.

Where the suit is on an instrument under private signature and the defendant denies his signature, the burden is on the plaintiff to prove the genuineness of such signature. Code Prac. art. 325.

Where a party denies his signature to the instrument sued on, his signature may be proved by witnesses, including experts, or by comparison of handwriting. Code Prac. art. 325; Civ.Code, art. 2245.

■ ■ Plaintiff did not produce any witnesses to the actual writing or signing of the notes. Plaintiff relies solely upon the testimony of one expert and upon comparison of handwriting.

The testimony of handwriting experts should be received and acted upon with caution. Temple v. Smith, 7 La.Ann. 562. And proof of handwriting by comparison is in most cases very unsafe, even where there are several documents for comparison. Barfield v. Hewlett, 6 Mart., N.S., 78; McDonogh's Succession, 18 La.Ann. 419, 445; Barlow v. Harrison, 51 La.Ann. 875, 25 So. 378.

■ The handwriting expert produced by plaintiff did not know the defendants and he was not acquainted with their handwriting or signatures.

The notes sued on and certain signatures of the defendants that were shown to be genuine were submitted by plaintiff to his expert witness for examination and comparison. The witness compared the admittedly genuine signatures with the names signed to the notes and appearing as endorsements on the backs of the notes. He testified, without qualification, that the names, V. Nicolosi and I. Nicolosi, appearing on the notes were signed by the same parties who had signed the documents submitted to him for comparison of the signatures, and he gave his reasons for

his opinion. On cross-examination, however, the witness was shown other genuine signatures of the defendants, and he testified just as positively that these genuine signatures of the defendants were not in fact their genuine signatures and that the persons who wrote the admittedly genuine signatures were not the same persons who signed the notes, and he also gave his reasons for his opinion.

This was all the testimony that was produced by the plaintiff to show that the signatures and endorsements on the notes sued on were the genuine signatures of the defendants. In view of the mistakes made by the witness in identifying the signatures of the defendants, his opinion, although given in the utmost good faith, is nonetheless highly unsatisfactory and unconvincing.

The plaintiff testified that the defendant, Vincent Nicolosi, gave him the notes while he was confined by illness to the Charity Hospital in the City of New Orleans. His story is that Vincent Nicolosi visited him in the hospital, and, during his visit, slipped the notes under plaintiff's pillow and it was sometime thereafter that plaintiff discovered the notes under his pillow. Plaintiff's daughter testified that she called at the hospital to see her father; that when she walked into the room, Vincent Nicolosi was standing by the bed and he "stuck some papers under the pillow." Plaintiff's wife also testified she was present in the hospital on the occasion that Vincent Nicolosi called there, and that she saw him with "both hands under the pillow," but she did not know what he placed under the

pillow. When asked on cross-examination why the defendant should have given him the notes, the plaintiff testified in the vaguest possible way that they were given in connection with some transaction involving property in the Parish of Tangipahoa.

We are not impressed by plaintiff's story. Vincent Nicolosi denied that he visited plaintiff at any time while he was confined to the hospital, and he specifically denied that he had slipped the notes under plaintiff's pillow as testified to by plaintiff and his wife and daughter. The record shows that the plaintiff was actually in the hospital on or about July 23, 1931, whereas the notes sued on are dated July 12, 1932, or approximately one year after plaintiff was confined to the hospital.

As further affecting the credibility of plaintiff as a witness, the record shows that the parties hereto were previously involved in a litigation with reference to some notes and that plaintiff signed a statement before three witnesses in which he acknowledged that the notes involved there had been raised by him from $200 each to a sum aggregating $5,500, without the consent or knowledge of the Nicolosis, and that the notes had been paid in full.

Both defendants took the stand as witnesses in their own behalf and specifically denied that they had signed and executed the notes sued on.

The original documents have been sent up with the record, and from the best comparison that we can make, we are unable to say that the disputed signatures are the genuine signatures of the defend-

ants. Our conclusion is that plaintiff has failed to discharge the burden of proof imposed upon him by law.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., takes no part.