205 So.2d 101 (1967)
DEPOSIT GUARANTY NATIONAL BANK, Plaintiff-Appellee,
v.
William Carl SHIPP and Succession of Carl Shipp, Jr., Defendant-Appellee,
Mrs. Louise Stevens Shipp, Executrix, Defendant-Appellant.
No. 10897.
Court of Appeal of Louisiana, Second Circuit.
November 28, 1967.
Rehearing Denied January 11, 1968.
As Amended January 11, 1968.
Writ Granted February 19, 1968.
*102 Thompson, Thompson & Sparks, Monroe, for appellant.
E. Rudolph McIntyre, Winnsboro, Cotton & Bolton, Rayville, John Barkley Knight, Jr., Winnsboro, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for appellee Deposit Guaranty Nat. Bank.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
The Deposit Guaranty National Bank, as successor to Deposit Guaranty Bank & Trust Company of Jackson, Mississippi, instituted this action to obtain judgment on two promissory notes. Named defendants therein are William Carl Shipp and the Succession of Carl Shipp, Jr. After trial judgment was rendered in favor of plaintiff, and Louise Stevens Shipp, the Executrix of the Succession of Carl Shipp, Jr., has lodged this appeal. The defendant William Carl Shipp has not appealed.
The notes sued upon bear the dates of October 29, 1964 and February 5, 1965 and were made payable on demand to the Deposit Guaranty Bank & Trust Company for the principal sums of $213,127.00 and $22,000.00, respectively. Each note was signed by William Carl Shipp as maker and purportedly bears the endorsement of Carl Shipp, Jr.
Prior to 1964 William Carl Shipp, the son of Carl Shipp, Jr., was engaged in a business concerned with investments in oil properties which required financing. He formed a connection with the Deposit Guaranty Bank & Trust Company, which, in the ordinary course of business, loaned him the money evidenced by the two notes. Some time after the confection of the notes the plaintiff bank succeeded to the assets of the Deposit Guaranty Bank & Trust Company and thus acquired title to the notes.
In the transactions between the bank and William Carl Shipp, William D. Mounger personally handled on behalf of the bank all matters involving the indebtedness herein sued upon, including the administration of the collateral security pledged for the payment of these notes. In such a capacity he collected the revenues accruing from the pledged security and applied it towards the liquidation of the indebtedness evidenced by the notes. As the several advances were obtained by William Carl Shipp from the bank only 90% was made available for unrestricted use by the borrower, the bank withholding 10% as "compensating balances". The sum so withheld was included in the principal of the note but bore no interest payable by the bank and could only be used by the borrower with the consent of the bank. The purpose of this operation, which is not unusual in the banking business, was for the bank to retain such a balance in its hands as an additional security for the loan.
*103 It is significant that on the face of the note dated September 5, 1965, the printed word "six" has been lined through and the word "seven" written. The change is initialed "W.D.M." This change which appellant terms an alteration is explained by Mounger, who testified that he made it to have the note correspond with the rate of interest agreed upon between the bank and William Carl Shipp.
No other irregularities or changes appear upon the face of either note. Evidence was adduced by plaintiff for the purpose of proving the signature of Carl Shipp, Jr. It included the testimony of William Carl Shipp, W. D. Mounger and J. R. Donnell and is convincing that Carl Shipp, Jr., did in fact endorse the notes as an accommodation party for the purpose of enabling his son, William Carl Shipp, to secure additional loans from the bank. Appellant in the trial court, in argument, and in brief before this court urges that plaintiff has failed to prove the genuineness of the signature of Carl Shipp, Jr. The evidence tendered in support of this position when considered in its most favorable light simply gives rise to an inference that the date appearing on the note, that is, October 29, 1964, may not have been the same date on which the endorser placed his signature thereon and there may have been a variance of a few days between the signing by Carl Shipp, Jr. and the dating of the note. The evidence does indicate that the note bearing date February 5, 1965 was not completely filled out or was a blank note at the time it was endorsed by Carl Shipp, Jr.
The defenses relied upon by the Executrix to avoid liability upon the notes may generally be stated to be: denial of the signature of Carl Shipp, Jr.; denial that plaintiff bank is a holder in due course; that the note of October 29, 1964 was altered as to the rate of interest; that the note of February 5, 1965, if executed by Carl Shipp, Jr., was signed in blank; that the withholding of 10% of the monies advanced by the bank resulted in a failure of consideration pro tanto and constituted usury; that the collateral was improperly handled; and that the accommodation endorser was secondarily liable and its rights against the collateral have not been preserved. Further, it is argued that a proper claim has not been filed with the Executrix; that the judgment as rendered against her is irregular; and exception is taken to the judgment of the trial court in rejecting its reconventional demand against William Carl Shipp.
The defenses so mentioned are discussed seriatim, but before answering the arguments presented, it should be noted that the liability of an accommodation party is as defined in LSA-R.S. 7:29[1] which states that such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking such instrument knew him to be only an accommodation party. Our jurisprudence has interpreted this provision to mean that the accommodation party is primarily liable to the same extent as the maker who receives value. Bank of Baton Rouge v. Hendrix, 194 La. 478, 193 So. 713 (1940); W. F. Brown and Sons v. Easterly, La. App., 4 So.2d 73 (1st Cir. 1941); Seelig v. Brusso, La.App., 121 So.2d 28 (Orl.Cir. 1960).
We have heretofore stated our conclusion that the signatures of Carl Shipp, Jr., appearing upon the notes are genuine and fully supported by the testimony of credible witnesses. The record leaves no doubt Carl Shipp, Jr., endorsed the two notes to enable William Carl Shipp to secure needed financing from the bank.
*104 The postulation that plaintiff bank is not a holder in due course is of no importance for the reason that the same legal and equitable defenses are available to the Executrix against the plaintiff bank as would have been available to her against the Deposit Guaranty & Trust Company. For all practical purposes the present bank stands in the shoes of its predecessor with respect to the parties sought to be held liable on the note. The record reveals that the Executrix has fully presented these special defenses to the trial court and to this court.
It is urged that the note of October 29, 1964 was altered as to the rate of interest. The change on the face of the note does not constitute a material alteration. As related supra, full and proper explanation was made by Mounger, the official of the bank.
Appellant argues that the note of February 5, 1965 is invalid as to Carl Shipp, Jr., for it was not completely filled out at the time it was signed by him. LSA-R.S. 7:14 provides for such a situation.[2] Mounger testified that in the banking business it is not unusual for a party to endorse promissory notes containing blanks to be afterwards filled in. A pertinent comment is found in 10 C.J.S. Bills & Notes § 136, p. 583:
"The delivery of an inchoate or incomplete bill or note, as where the instrument is delivered with blanks left for the insertion of necessary details, or where a signature on a blank paper is delivered with the intention of having a complete instrument written over it, confers presumptive authority on the person to whom it is delivered, and on subsequent holders, to complete the instrument by filling the blanks, or by writing the instrument, as the case may be, in the way apparently contemplated by the signer, with matter in general conformity with the character of the writing; and the provision of the Negotiable Instrument Act that, `where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein,' * * *" [10 C.J.S. Bills & Notes, § 136, pp. 583-584]
No evidence was presented to show that William Carl Shipp or any official of the bank violated the implied or expressed authority of Carl Shipp, Jr., in filling in the blank places in the note. Such notes were executed to correspond with the obligations of William Carl Shipp as evidenced by said notes and it must be assumed the intention of the accommodation endorser was to be bound by the completed note.
Next, it is contended the endorsements of Carl Shipp, Jr., must be considered as discharged when plaintiff withheld from the loans made by it the sums which went into the "compensating balances"; and that such action resulted in usury and a failure of consideration. The plea of usury so advanced is predicated on the practice of the bank in withholding 10% from each loan. The amounts so withheld totaled $28,000, but it remained the property of the borrower. Counsel argues that such withholdings are in fact discounts which in the instant case have brought about the *105 equivalent of an interest charge of 17%. As such security remains the property of the borrower and is subject to being applied as a payment on the debt, it may not be considered as a discount of the loan. The rate of interest so charged in each note is 7% per annum and is not unlawful. It is our conclusion, therefore, that no irregularities in the handling of the notes have been shown, and the charge that such withholdings by the bank constituted as to the borrower a failure of consideration is answered by the fact that the sums withheld remained the property of the borrower and subject to the liquidation of the indebtedness.
Next it is asserted the bank has not properly and adequately administered the oil and gas property evidenced by notes, deeds of trust and securities furnished as collateral for the indebtedness of William Carl Shipp. The record is void of evidence supporting this contention. Mounger, whose testimony furnished the only evidence on this point, stated that none of the property held as collateral has been released; that all revenues accruing from said collateral have been properly credited; and that the payments as set forth on the notes are true and correct.
Error is assigned in that trial court failed to rule that Carl Shipp, Jr., has been discharged from liability because plaintiff did not bring suit upon the collateral security and has not expressly reserved its rights to do so against Harold J. Evans and William Carl Shipp. It should be observed that Harold J. Evans does not appear as a maker or endorser of the notes herein sued upon. The position so taken by the Executrix is that she is secondarily liable and it is encumbent upon plaintiff to exhaust remedies against the collateral prior to holling the accommodation endorser liable. This argument is untenable for as an accommodation party the Executrix is primarily and not secondarily liable.
In further argument, appellant registers objections: to the form and manner in which appellee filed its claim with the Executrix of the Succession of Carl Shipp, Jr.; to the failure of the judgment to order plaintiff to deliver to her as Executrix the securities pledged to the bank; and to the rejection of her reconventional demand against William Carl Shipp for the amount of any judgment rendered against the Succession of Carl Shipp, Jr.
The claim against the Succession as made by the bank was filed in writing on March 16, 1966. It gave notice to the Executrix that plaintiff bank was the holder of the two notes which were fully described and that both were endorsed by the decedent, Carl Shipp, Jr., and demand for payment was made. When the Executrix failed to acknowledge or reject the claim so filed more than 30 days thereafter, this suit was instituted in accordance with Article 3242 of the Code of Civil Procedure. No special form is required for the presentation of a claim by a creditor of the Succession other than it be in writing. LSA-C.C.P. Art. 3241.
The argument that the judgment as rendered should include an order that the securities pledged to secure payment of the debt be delivered to the Executrix must also fail as the debt for which such collateral was given as security has not been paid. In order to entitle the endorser or surety on the note to possession of such collateral the note must be paid and until the Executrix makes such payment she is not entitled to the possession to such collateral. LSA-C.C. Arts. 2159, 2160, 2161 and 2162; Guaranty Bank & Trust Company v. Canal Land & Live Stock Company, 161 La. 253, 108 So. 472 (1926); Motors Securities Company v. Aetna Insurance Company, La.App., 17 So.2d 316 (2nd Cir. 1944).
Appellant also contends the court erred in rendering a judgment against the *106 Executrix which orders her to list plaintiff as a creditor in the amount set forth in the judgment and to place the amount of the judgment on the tableau of distribution to be paid in due course of administration. The objection so registered appears to be predicated on Article 3247 of the Code of Civil Procedure which provides that execution shall not issue against any property of a succession under administration to enforce a judgment against the succession representative, or one rendered against the deceased prior to his death. The purpose of this provision as reflected in the Official Revision Comment to Article 3247 was to withdraw the succession from ordinary execution by creditors and subject it only to the orderly process of administration. As we construe the judgment as written it will not affect the Executrix in the administration of the succession. Counsel cited Coyle v. Succession of Creevy, 34 La.Ann. 539 (1882), but this decision is inapposite, having been written long prior to the Code of Civil Procedure. The judgment provides:
"This judgment shall only be executory and enforceable against Mrs. Louise Stevens Shipp, Executrix of the Succession of Carl Shipp, Jr., as a liquidated claim against the Succession of Carl Shipp, Jr.; that the Executrix forthwith list the Deposit Guaranty Bank as a creditor of the succession, in the amount of the within judgment, and Mrs. Louise Stevens Shipp, as Executrix, is ordered to place the amount of this judgment on the Tableau of Distribution as a claim against the succession, to be paid in due course of administration."
The judgment as so written, we think, meets the limitations of the Code.
Appellant prays that the case be remanded for the purpose of sustaining the reconventional demand by the Executrix who prayed that in the event of judgment against the Succession of Carl Shipp, Jr., that it have and recover judgment against William Carl Shipp in the same amount as would be rendered against it. The record reveals that issue was not joined by William Carl Shipp nor was a default entered and confirmed against the defendant. Thus there was no authority to grant the relief requested and no error was committed by the trial court. All Hans Credit Union v. Saucier, La.App., 143 So.2d 281 (4th Cir. 1962).
William Carl Shipp has offered no defense to the demands of plaintiff bank and as the maker of the notes herein involved has supported their validity. We have been unable to find any material irregularity which could in any wise affect the liability of the maker and endorser upon the notes. Although the defenses have been earnestly asserted on behalf of the Executrix, we are impelled to to approve the judgment as rendered by the trial court.
Accordingly, the judgment appealed is affirmed at appellant's cost.
AYRES, Judge (dissenting):
From my review and appreciation of the evidence relating to the purported endorsement by Carl Shipp, Jr., of the promissory notes forming the subject matter of this litigation, I find myself in disagreement with the majority opinion and the conclusion reached therein that Shipp did, in fact, endorse those notes, and, for the reasons hereinafter assigned, I respectfully dissent.
Plaintiff contends no issue of the validity of Carl Shipp, Jr.'s endorsements was presented in the pleadings and that, even if so, a denial of Shipp's signature would have constituted an affirmative defense with the burden upon the executrix of his estate, as a defendant, to establish the defense, that is, that Shipp did not endorse the notes.
The pleadings disclose that, as to the first of these contentions, plaintiff's position is, as a matter of fact, untenable. The executrix, in her answer to plaintiff's petition, after explaining the physical impossibility of Carl Shipp, Jr., to have endorsed the notes, denied, not only once but several times, the genuineness of his signature.
*107 Representative allegations contained in her answer are:
"Respondent, therefore, denies that the purported signature of Carl Shipp, Jr., on the back of the note of October 29, 1964, is the true and genuine signature of Carl Shipp, Jr., and in her capacity as Executrix of the Succession demands strict proof thereof."
and

"Respondent, therefore, for lack of sufficient information upon which to base a belief as to whether the signature on the back of either of said notes is the true and genuine signature of Carl Shipp, Jr., denies same and demands strict proof that the signatures are those of Carl Shipp, Jr." (Emphasis supplied.)
The position taken by plaintiff, that the burden of proof to disprove defendant's signature upon a note when denied is upon the defendants, is like wise untenable.
Applicable rules of law are:
"He who claims the execution of an obligation must prove it,"
so it is provided in LSA-C.C. Art. 2232. However,
"The person against whom an act under private signature is produced, is obliged formally to avow or disavow his signature,"
but,
"The heirs or assigns may simply declare that they know not the handwriting or the signature of the person they represent." LSA-C.C. Art. 2244.
As to the burden of proof, it is declared:
"If the party disavow the signature, or the heirs or other representatives declare that they do not know it, it must be proved by witnesses or comparison, as in other cases." LSA-C.C. Art. 2245.
The jurisprudence has uniformly followed these statutory rules to the effect that where a defendant in an action on a private instrument denies his signature thereto, the burden is upon the plaintiff to establish the genuineness of his signature. The rule is so well known as to make it unnecessary to cite authorities.
William Carl Shipp is the son of Carl Shipp, Jr., deceased, and is the stepson of Mrs. Louise Stevens Shipp, executrix of her late husband's estate.
William D. Mounger, vice president of plaintiff's bank, and William Carl Shipp testified that Carl Shipp, Jr., endorsed the note for $213,127 dated October 29, 1964, in their presence while he, Carl Shipp, Jr., was physically present in Mounger's office in plaintiff's bank at Jackson, Mississippi. Mounger waivered in his testimony as to the exact date the endorsement was signed, eventually stating that it was possibly signed two or three days before the date of the note, but certainly no longer than four days prior thereto. William Carl Shipp testified that his father went to plaintiff's bank only once and that was on the occasion when he endorsed that note.
Thus the testimony of both Mounger and William Carl Shipp fixes the place where Carl Shipp, Jr., endorsed the first of the notes as Mounger's office in plaintiff bank at Jackson, Mississippi, and that the date of the endorsement was not earlier than October 25, 1964, nor later than October 29, 1964. The note bore the bank's official stamp as of October 30, 1964, and consequently no possibility existed that it was endorsed at a later date. Such impossibility was confirmed by Mounger. No other dates, no other times, and no other places were claimed as those on or at which Carl Shipp, Jr., signed or could have signed as endorser of the note of October 29, 1964.
The record discloses a state of facts establishing the absolute impossibility of Carl Shipp, Jr.'s having gone to Jackson, Mississippi, or of his having endorsed the note in Mounger's office. Carl Shipp, Jr., entered St. Francis Hospital October 11, 1964, and *108 underwent surgery for a condition disclosed as cancer. He was released from the hospital October 30, 1964, and permitted to return to his residence. However, he was required to and did return to the hospital daily thereafter, except Saturdays and Sundays, for treatments with cobalt which were described as excruciatingly painful on many occasions. These treatments were continued until December 12, 1964.
The fact and duration of Shipp's hospitalization were not only established by the testimony of Mrs. Shipp, Dr. W. B. Liles, a surgeon who attended and operated upon Shipp while he was in the hospital, and James W. Hice, administrative assistant of the hospital, but by the hospital records themselves and, finally, through the stipulation of counsel. The utter impossibility of Carl Shipp, Jr.'s presence and signing of the first of the notes in Jackson, Mississippi, was thus established beyond any doubt.
With reference to the second of these notes, dated February 5, 1965, William Carl Shipp testified he presented the note to his father for his endorsement on the day of its date while his father was hospitalized in the St. Francis Hospital, and that his father then and there endorsed it. Contrary to this testimony, the record establishes that Carl Shipp, Jr., was not in the hospital on February 5, 1965, nor at any time between the dates of December 12, 1964, and April 27, 1965. These facts are established not only by the testimony of Mrs. Shipp but by that of the administrative assistant and the hospital records. Thus, Carl Shipp, Jr., was not in the hospital on February 5, 1965, when and where William Carl Shipp testified he endorsed the note, nor had he been hospitalized there for eight weeks prior to that date, nor was he hospitalized thereafter during the next eleven weeks.
The testimony as to the acts of endorsement is so interlinked with the circumstances of the time and place of the endorsements that, as to these several phases, it cannot be separated but must be given consideration as a whole. Hence, where the positive and uncontradicted proof established the spurious nature of the testimony as to the time and place of the endorsements, the remainder of the witnesses' statements that the purported endorsements were made in his or their presence at such impossible times and places ceases to have any convincing force or effect.
J. R. Donnell was the only other witness produced by plaintiff who testified concerning the handwriting of Carl Shipp, Jr. Donnell was not a handwriting expert; nor did he claim to be. He was a former clerk of court and, at the time he gave his testimony, an abstracter. He never saw the notes until they were submitted to him on the morning he was called as a witness. Little study, if any at all, was or could have, in the time intervening, been given to the endorsements. Only one signature of Carl Shipp, Jr., was used by the witness for comparison with endorsements on the notes and that was one on an oil lease of October 6, 1954, more than ten years prior to the dates of the notes.
Donnell pointed to no characteristics in Shipp's handwriting; nor were similarities in the disputed signatures noted with reference to Shipp's signature on the lease. No factual basis was established for the witness' opinion that the notes bore Shipp's genuine signature. No substantial reasons were assigned as a basis for his opinion.
In stating their opinions, experts should state the facts upon which their opinions are based. Chandler v. Barrett, 21 La.Ann. 58 (1869); Town of Slidell v. Temple, 155 So.2d 681 (La.App., 1st Cir. 1963). Otherwise, no material weight or credit may be given their testimony. Interdiction of Escat, 206 La. 207, 19 So.2d 96 (1944); Carrier v. Aetna Casualty & Surety Co., 186 So.2d 445, 449 (La.App., 1st Cir. 1966); Town of Slidell v. Temple, supra; chandler v. Barrett, supra. Expert opinions are worthless without proper foundations and facts to support then. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654, 657 (1941); State Through Department *109 of Highways v. Gras, 131 So.2d 628, 635 (La.App., 2d Cir. 1961); Williams v. Bituminous Casualty Corporation, 131 So.2d 844, 849 (La.App., 2d Cir. 1961).
Gauged by these rules, Donnell's maintenance that the purported endorsements of the notes by Carl Shipp, Jr., were genuine, notwithstanding the utter impossibility of Shipp's having endorsed the first note in Jackson, Mississippi, and the second in a Monroe hospital, is unconvincing.
As pointed out in D'Angelo v. Nicolosi, 197 La. 797, 2 So.2d 216, 217 (1941), even
"The testimony of hand writing experts should be received and acted upon with caution. Temple v. Smith, 7 La.Ann. 562. And proof of handwriting by comparison is in most cases very unsafe, even where there are several documents for comparison. Barfield v. Hewlett, 6 Mart., N.S., 78; McDonogh's Succession, 18 La. Ann. 419, 445; Barlow v. Harrison, 51 La.Ann. 875, 25 So. 378."
The testimony of neither Mounger nor William Carl Shipp can be viewed as coming from impartial witnesses. Both are obviously very much interested, as well as personally and individually concerned in the success or failure of this litigation. The only witness apparently disinterested is Donnell, but even if his testimony should be otherwise acceptable it is insufficient, as a matter of law, to establish the genuineness of Shipp's endorsements. In construing the language of LSA-C.C. Art. 2245 in matters of this kind, where it is recited a signature to a private instrument "must be proved by witnesses" (emphasis supplied), it has been held that the testimony of at least two witnesses to the fact is required. Watts v. Collier, 140 La. 99, 72 So. 822, 824 (1914); Jenkins v. Lee, 166 So.2d 645 (La.App., 1st Cir. 1964).
Moreover, it is unrealistic to suppose that Carl Shipp, Jr., would have endorsed commercial paper in blank without knowing either the amount to be filled in, the rate of interest to be charged, or its maturity. Appropriate is an observation made by this court in Messina v. Battaglia, La.App., 45 So.2d 924, 926 (1950):
"It is not in keeping with human experience nor with sound business practices for a man, who is careful about incurring civil obligations, to sign, as an accommodation, a note for another without knowing the amount of the note and its maturity. The presumption is that he will not do this."
Plaintiff has not, in my opinion, borne the burden of proof imposed by law upon it and established to any degree of certainty that Carl Shipp, Jr., endorsed the notes sued on.
NOTES
[1] This section reads:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."
[2] "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time." [2 LSA-R.S. 7:14, p. 488]