131 So.2d 844 (1961)
David WILLIAMS, Plaintiff-Appellee,
v.
BITUMINOUS CASUALTY CORPORATION, Defendant-Appellant.
No. 9539.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1961.
Rehearing Denied July 7, 1961.
Mayer & Smith, Shreveport, for appellant.
Wilson, Abramson, Maroun & Kaplan, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action for workmen's compensation. From a judgment awarding plaintiff compensation at the maximum statutory rate as for total and permanent disability, defendant appealed. Defendant contends that the court erred in its conclusion that plaintiff is suffering from traumatic neurosis and is, therefore, entitled to compensation.
*845 The record discloses that plaintiff was employed by defendant's assured as a truck driver to haul gravel. While so employed, on August 31, 1959, plaintiff sustained accidental injuries while engaged in the performance of his duties in the course and scope of his employment. While stopped at the foot of a bridge awaiting passage of an on-coming vehicle, plaintiff's truck was struck, from the rear, a very severe blow by another truck of the employer. By the force of the impact of the collision, plaintiff's truck was knocked a distance of approximately 30 feet.
As a result of the accident, plaintiff complained of these injuries: that he was rendered unconscious; that he sustained a whiplash injury to his neck and cervical spine; and that he additionally sustained injuries to his left shoulder and to the muscles of that area of the body, as well as to the nerves of the brachial plexus on the left side of his neck. Because of said injuries and the attendant constant severe pain, plaintiff claims he is unable to do work of any reasonable character.
It is strenuously urged by counsel for defendant that plaintiff failed to establish his case by a preponderance of the evidence.
Following the accident, plaintiff, on September 3, 1959, reported to Dr. James H. Eddy, Jr., a physician and surgeon, and remained under his care until October 5, 1959. During this period, compensation in the amount of $130 was paid as were medical expenses in the sum of $143.16.
Subsequent to the institution of this suit April 8, 1960, plaintiff was, on May 25, 1960, referred to Dr. Erle W. Harris, a psychiatrist. From his examinations, Dr. Harris concluded plaintiff was suffering from traumatic neurosis or a conversion reaction.
On reporting to Dr. Eddy at his office September 3, 1959, the doctor's findings, after examination, were that plaintiff was experiencing some pain on motion of his neck and shoulder. The doctor was of the impression, at the time, that plaintiff had possibly sustained a strain of the muscles of the neck. Treatment by a heat process was advised and administered, as were sedatives for the relief of pain. Rest was also prescribed. It was anticipated plaintiff would be able to return to work in from four to six days thereafter. Nevertheless, plaintiff returned to Dr. Eddy September 9, 1959, with complaints described by the doctor as out of proportion to the physical findings. Dr. Eddy testified plaintiff was, at that time, "distraught and was letting his distress carry him away physically." Plaintiff returned on a third occasion to Dr. Eddy on September 17, 1959, complaining of dizziness, of pain under his left scapula, and of no improvement in the condition of his neck. On that occasion, plaintiff was hospitalized for observation and treatment, remaining in the hospital until October 5, 1959. For the treatment of injuries to his neck, plaintiff was placed in traction. Plaintiff's behavior while in the hospital was characterized by the doctor as unusual and uncooperative.
At the conclusion of this period of hospitalization, despite a continuation and worsening of plaintiff's complaints, including, in addition thereto, a numbness of his hands, Dr. Eddy found no physical facts warranting or justifying such complaints. The doctor was of the opinion plaintiff was then well and able to return to work.
On a subsequent examination of April 5, 1960, Dr. Eddy found no evidence of injury or of disability. As to plaintiff's complaints, the doctor testified:
"* * * At that time he complained of serious headaches; that his left arm went to sleep, that his hand felt numb, that he had a glove-like numbness to just above the elbow; that he had headaches every day, just on the left side in front; had pain in the back of his neck, pain over the parietal region, the region just above and behind the ear; that his ears bothered him; that he felt like water was bubbling *846 in his ears; that he was losing some weight; that his left arm was smaller than his right; that he had been unable to work since September and his neck felt stiff and he couldn't turn to the left side. * * *"
Then followed the doctor's observation that
"* * * It gets hard sometimes to decide in your mind, does a patient purposely, wilfully and consciously feign symptoms for purposes of one kind of gain or another, or does a person, because he is concerned with himself upset over being in an accident, being fired from a joband then for many economic reasons that are confusing, worry himself into feeling bad. Now, it is a fine point of difference and one that probably doesn't make a lot of matter anyway. I think the point is that we frequently see people who have no evidence of any injury but who haveit is to their advantage not to be well and so they are not well. But that doesn't mean they are hurting."
And, on being queried as to whether worry could precipitate or bring about illness, the doctor testified:
"Oh, I think everyone will agree thatwho have had the experience of worry and anxiety and problems and because we had worries and anxieties and problems we got headaches. If we got a headache from worrying, we can get a neckache from worrying and when the cause for worry is removed the headache and the neckache go away. And if it is removed to the person's satisfaction it goes away very well.
"Giving this man the benefit of the doubt, on the second visit I saw him I felt like he was heading for just exactly what he headed for, because his appearance in the office, his frown when he talked to you, his belligerence about having had the accident and what he felt like was through no fault of his own. At the time, I had the feeling that he was having more emotional than physical trouble and for that reason made a point of spending a great deal of time discussing with him what he was headed for, and to reassure him that he had no physical ailments and that the best thing he could do was to exercise and follow the advice he was given. The fact that he refused to follow those advices make me feel inclined to say that this is not an unintentional set of complaints. To clarify that, I think that this is a gross malingering." (Emphasis supplied.)
Although conceding plaintiff's complaints had been basically the same, the doctor added:
"They have gotten bigger from the very beginning. From the first time I saw him they were minimum; mild; the last time I saw him they were the most he ever had and each time in between they were centered."
Plaintiff was also examined by three orthopedists: Dr. Ray E. King, September 28, 1959, and April 25, 1960; and Drs. Willis J. Taylor and Bennett H. Young on the latter date. They found no objective nor clinical evidence or pathology of physical disability.
The question, however, is whether the plaintiff incurred a post-traumatic neurosis, a conversion reaction, or an emotional disturbance as a result of the accidental injuries sustained by him on August 31, 1959, by reason of which he is unable to return to and discharge the duties of his former occupation as a truck driver.
Dr. Harris, prior to making his initial examination on May 25, 1960, reviewed the medical records of the other medical examiners. The doctor was of the opinion that plaintiff was suffering from a conversion reaction which he defined as
"* * * a psychiatric diagnosis applied to persons who have a mental or *847 emotional disturbance which reflects, not in primarily mental symptoms or behavioral symptomsthinking and behavior remain approximately within the normal rangebut which causes an interference with bodily functions in producing pain, sensory disturbances, such as numbness, paralysis; such complaints as weakness; these things are the general type of symptoms that we see in the people whom we give a psychiatric diagnosis of conversion reaction."
With respect to a definition of "conversion hysteria" as an emotional disturbance in which a patient's anxiety is unconsciously directed into the muscular or sensory system of the body, resulting in impairment thereto, we said, in Miller v. United States Fidelity and Guaranty Co., La.App. 2d Cir., 1957, 99 So.2d 511, 516 (writs denied):
"We have verified this definition by reference to certain recognized medical texts. Dr. Bernard S. Maloy in his work on `Nervous and Mental Diseases' (1935), page 307, et seq., under the topic of `Traumatic Neurasthenia', discusses post-traumatic neurosis and hysteria. Inter alia, he makes the following observation:
"`Posttraumatic hysteria is perhaps the most common of the "functional" nervous diseases met with after injury. These patients present such signs and symptoms as blindness, deafness, paralysis, anesthesias, and disturbances of motion and gait, which are based mainly upon the patient's notions of their anatomic relationships. They are termed pseudo-organic signs and symptoms.'
"Dr. Gray in his `Attorney's Text Book of Medicine' (Third Edition, 1951), Section 101.01 defines `hysteria' as a disease wherein the loss of emotional control leads to derangement in the nervous system and resultant perversions of motor and sensory functions."
The term "conversion reaction" was said by Dr. Harris to be, in many instances, synonymous with traumatic neurosis, but the latter term was said to be used generally to designate a group of conversion reactions following or due to either physical or mental trauma.
Plaintiff's condition portrayed features which the doctor stated he had learned to associate with this type of reaction, such as the specific complaints, as well as the nature thereof, and the manner in which they affected him and his manner of thinking. These, the doctor concluded, pointed to the correctness of his diagnosis. This condition was, in his opinion, caused by, and had its origin in, the accident in which plaintiff was involved and the injuries sustained at the time.
Dr. Harris' last examination was October 20, 1960, the day before the trial of this case. As a result of that examination, the doctor testified there had been little change in plaintiff's condition and that he remained of the definite opinion plaintiff was suffering from traumatic neurosis or a conversion reaction.
Dr. G. H. Cassity, a general practitioner and surgeon, with an experience of 58 years, examined plaintiff January 7, 1960, when he found the left side of plaintiff's neck considerably swollen, quite painful on rotation to the left, and, to a lesser degree, on movement in any direction. Pain was also produced on movement of the shoulder. This doctor's opinion was that plaintiff had sustained a rather severe type of whiplash injury, as well as some injury to his left shoulder, and to the nerves forming the brachial plexus on the left side of the base of his neck.
A second examination was made by Dr. Cassity March 16, 1960, when little change in plaintiff's condition was noted. The swelling in the neck continued and was painful on the application of pressure. Numbness in the left arm and fingers was noted on the second examination. No improvement was noted, on the last examination, *848 in plaintiff's neck, left arm, and shoulder, the doctor expressing the opinion that the conditions had worsened.
Plaintiff was examined March 21, 1960, by Dr. Albert I. Clark, whose examination disclosed that the muscles of the left side of the neck were tender and painful and the presence of numbness in the left arm from the shoulder outward. This latter condition was tested and determined by means of a pin-prick reaction, and, in comparison with similar tests on the right side, a definite decrease in pain perception was noted. Limitation of movement of the head was noted because of pain. The conclusion of the doctor was that plaintiff had sustained a whiplash injury to the cervical spine as a result of the accident, with damage to the left brachial plexus nerves, resulting in a numbness and decrease in strength of the left arm. Additionally, plaintiff was said to present a terrific nervous phenomenon, or a psychoneurosis anxiety state associated with mild hysteria. Dr. Clark was of the opinion, as were Drs. Harris and Cassity, that plaintiff was unable to perform the duties of his former employment. The duration of such disability was variedly estimated from six months to two years, dependent upon satisfactory response to treatment. Even, at best, some slight permanent disability was to be anticipated.
Traumatic neurosis or a conversion reaction, forms of which are sometimes referred to as hysteria, are not new to the jurisprudence of this State. It has been recognized that trauma, such as a blow received in an accident, could and does produce symptoms of disabling pain or paralysis long after the disappearance of objective signs or evidence thereof. The principle of allowing recovery for disability upon the basis of a diagnosis of neurosis, a conversion reaction, or hysteria is now firmly established. See Miller v. United States Fidelity & Guaranty Co., La.App. 2d Cir., 1957, 99 So.2d 511, 518-520, wherein a similar subject matter was presented, and the authorities extensively reviewed. Thus, it is well established in the jurisprudence that, where the medical proof is satisfactory, the victim of traumatic neurosis may be held to be a disabled person entitled to compensation under the statute. LSA-R.S. 23:1021 et seq.
Notwithstanding that the treating physician and surgeon and the orthopedists who testified on behalf of plaintiff were apparently inclined to the view that plaintiff was malingering, we cannot, on the basis of the record herein presented, so conclude. The principle that courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such conclusion is so well imbedded in our jurisprudence as to preclude the necessity for specific citations. However, see Miller v. United States Fidelity and Guaranty Co., supra; Roy v. Guillot, La.App. 2d Cir., 1955, 84 So.2d 469.
In the instant case, there is no such character of evidence and, as stated, a compensation claimant is not to be stigmatized as a malingerer in the absence of clear and convincing proof. The facts of this case, viewed in the light of plaintiff's previous service record, as well as his previous work record, do not accord with such an idea.
In this regard, it may be pointed out that Dr. Harris was the only psychiatrist who testified, and his testimony stands uncontradicted in the record. His specialty is the particular field in which plaintiff's ailment comes. The jurisprudence is replete with pronouncements that the opinions of experts, concerning matters coming within their particular specialty, are entitled to greater weight than the testimony of those in whose fields the subject matter does not fall. Hence, the conclusion of Dr. Harris, a psychiatrist, that the plaintiff in this case is suffering from traumatic neurosis or a conversion reaction of a disabling nature must be accepted under the facts and circumstances established to exist here.
*849 Able counsel would have us discount the weight of the testimony of Dr. Harris under the contention that his opinion is based on facts not shown to exist or which vary materially from the actual facts. We are in agreement with the rule that the value of the opinion of an expert witness is dependent upon the existence of the facts upon which it is predicated.
Nor are we unmindful of the principle that the evidence in cases involving claims predicated on traumatic neurosis or a conversion reaction should be scrutinized with extreme care, so that employers and insurers may be protected against unjustified and unwarranted claims, and, at the same time, that a justified claim may not be denied to a deserving claimant. In this regard, we stated, in Miller v. United States Fidelity and Guaranty Co., supra [99 So.2d 518]:
"We are fully cognizant of and have striven to take into proper consideration the dangers of abuse that are implicit in the acceptance of mental and nervous disorders and affections as constituting disability within the intent and purpose of our compensation statute. This danger has been voiced numerous times by the courts of this state, and it is accepted as an established principle, that the evidence in cases of this nature should be scrutinized with extreme care and that every precaution should be taken to protect employers and insurers against unjustified claims which lie in the somewhat nebulous realm of mental affections. On the other hand, the contrary danger of denying recovery to a deserving claimant is equally apparent."
The facts shown to exist in the instant case constituted ample bases, in the opinion of the psychiatrist, for the conclusions reached by him. We find no basis for us to disagree. The trial court concluded, for reasons assigned in writing, that plaintiff had sustained the burden of proof imposed upon him by law. With that conclusion, from our review of the record, we find ourselves in accord.
The judgment appealed is, therefore, affirmed at defendant-appellant's cost.
Affirmed.

On Application for Rehearing.
PER CURIAM.
Defendant, in an application for a rehearing, contends that the court erred in giving effect to the opinion of Dr. Erle Harris, a psychiatrist, which opinion, it is claimed, is without probative value and is insufficient to sustain a finding that plaintiff suffered traumatic neurosis. In this regard, the assertion is made that the opinion was based on facts and assumptions which were not in accord with the credible and uncontroverted facts in the record. Accordingly, it may be pointed out that, although plaintiff reported to his treating and examining physicians he had not been able to work since the accident, he had, nevertheless for a period of three months from November 21, 1959, to February 19, 1960, been employed as a common laborer doing pick-and-shovel work on a construction project.
We are in accord with the principle that for an expert medical opinion to be of value, the reality of the state of facts upon which it is based must be shown to exist. Keener v. Fidelity and Casualty Company of New York, La.App., 96 So.2d 509, 515. We are also in accord with the rule that claims predicated on traumatic neurosis or conversion reaction should be scrutinized with extreme care. Miller v. United States Fidelity and Guaranty Co., La.App., 99 So. 2d 511.
No showing is made that plaintiff was guilty of misrepresentations as to any facts other than his aforesaid work record. That fact, at the most, was only one of the many factors considered by the doctor in formulating his opinion. After again reviewing *850 the record, we do not find that plaintiff's aforesaid misrepresentation was material to, or had any substantial bearing upon, Dr. Harris' opinion as to the existence, cause or extent of plaintiff's disability.
The application for a rehearing is, therefore, denied.