JOHNSON, Judge.
Plaintiff appeáls'from a judgment dismissing his suit for permanent and total disability under the Louisiana Workmen’s Compensation Law.
Plaintiff was employed as a laborer on the construction of a new building to handle jacks, pans, bar joists and 2x8 boards in connection with the laying of concrete.
The petition alleges he was injured on May 25, 1960, when a scaffold broke, causing him to fall backwards six to eight feet and to land on his back, resulting in injuries from which he presently suffers “ * * * almost continual pains in the lower region of his back, in the region of his hips and lower extremeties; he has occasional headaches and his vision has been impaired; that he suffers from occasional pains in his right elbow * * Defendants admit that plaintiff fell from a scaffold. Workmen’s compensation was paid to August 11, 1960.
A brief summary of plaintiff’s own testimony is that while working on a scaffold a board broke and he fell 6 to 8 feet, landing on his back; that he was sent to Dr. Paine’s office; that Dr. Paine examined him and put him in the hospital; that he received treatment from Dr. Paine in the hospital until June 1st and continuing thereafter in the doctor’s office for about six weeks when he was told to go back to work; that he reported for work and, after working about one day, his back “started hurting him real bad;” that upon telling his foreman about it, his foreman told him to go back to the doctor which he did. He then received further treatment, and was discharged again as able to work. He did not go back to Ceco Steel Products Corporation, but did work for about forty-five minutes carrying some beds down-stairs for someone whose name he did not know in New Orleans. He left New Orleans and went to Lafayette, where he worked a short time on each of several jobs, such as carrying chairs, janitorial duties, none of which was heavy *163 labor according to his statement. He said his back continued to hurt him and he has not worked any more because of the pain. He does not claim to have any pain in the lower extremeties or any other place except an area in his back about the size of a quarter, about two inches below the belt line.
Dr. M. D. Paine, a general practitioner, diagnosed plaintiff’s original injuries as severe contusions to the muscles of the back and right elbow and an abrasion of the elbow. Plaintiff was admitted to Flint-Goodrich Hospital where he was treated until June 1, 1960, at which time he was discharged from the hospital. Office treatments were given by Dr. Paine on June 7, 10, 14 and 16. On this last date the doctor determined that most of the objective findings had “completely diminished.” By June 21 it was the doctor’s belief that plaintiff “had recovered to a point that he would be able to return to work on or about July 1st.” On July 13, 1960, plaintiff told Dr. Paine that he attempted to return to work but was unable to do so. He was ultimately discharged to return to work on August 1, 1960. However, plaintiff returned to Dr. Paine on September 16,1960, and stated that he re-injured his back lifting some furniture for a neighbor. This being a new injury while working for someone other than the insured, this doctor saw him no more.
The medical testimony for defendants, included Dr. Paine, the treating physician, and Dr. Hyman R. Soboloff, an expert in the field of orthopedic medicine, who held that plaintiff had sustained a contusion of the muscles of his back, but felt he could return to work in August, 1960. Plaintiff’s expert as regards the objective back injury was Dr. Blaise Salatich who considered the plaintiff permanently and totally disabled.
The original disability resulting when he fell from the scaffold is no longer involved. This case has now developed into a traumatic neurosis claim, that ever growing field of workmen’s compensation cases. The petition sets up no claim for a neurosis, but the testimony and the argument on appeal is geared to a neurotic disturbance, as set out by plaintiff at page 5 of his brief on appeal as follows:
“After all evidence was in, appellant submitted his case on the theory that appellant was presently suffering from a psychiatric or neurotic disturbance which resulted from the subject accident and which rendered appellant totally disabled and, therefore, entitled to compensation.”
The evidence in cases involving claims based on traumatic neurosis has to be examined with extreme care. Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844; Miller v. United States Fidelity & Guaranty Co., La.App., 99 So.2d 511, 518.
Dr. Arthur W. Epstein, a specialist in the field of psychiatry and neurology, testified on behalf of the plaintiff. He first examined plaintiff on December 20, 1960, at the request of plaintiff’s attorney. On his initial neurological examination Dr. Epstein found that there was no definite abnormality and because he found a diminution in the left ankle jerk, he felt that plaintiff presented a diagnostic problem. There was also a serious question in his mind as to whether plaintiff had a herniated disc, or a post traumatic neurosis. On his subsequent March 18, 1961, neurological examination of plaintiff, just four days before the instant trial, Dr. Epstein found that the left ankle jerk no longer appeared diminished. The plaintiff still complained of back pain, although somewhat decreased in intensity. At this time it was the doctor’s opinion that there was a temporary irritation of the nerve root, most likely due to compression of a disc, which was subsiding, in view of the return of the ankle reflex. He further thought that on this organic disturbance there was a superimposed emotional aspect which still existed at the time of the trial, and that this emotional upset was primarily responsible for keeping the patient away from work. He referred to this as a neu* *164 rotic reaction to the injury, that is, because the plaintiff had an accident, even though there is nothing physical to base it upon, the plaintiff believes he has pain and he can’t work because he believes he has pain. His conclusion was that plaintiff was totally disabled for an indeterminable period.
Dr. Epstein’s opinion was arrived at after the plaintiff related a case history of having been able to do only very light work on several jobs of short duration when he suffered back pain continuously and to such an extent he was unable to keep working.
This record proves quite definitely that the history related by plaintiff to his doctors was erroneous in important and material particulars. After moving to Lafayette, he was employed by Horace B. Rickey, a general contractor, as a laborer on the construction of the Town House Motel. According to the job superintendent, plaintiff performed strenuous manual labor, using a shovel in dirt filling and grading, and as a carpenter’s helper. Plaintiff never complained of pain or a back injury during this work. He was then discharged because he was hired only as a replacement until the work was caught up. Plaintiff’s statement is that he only moved some chairs out of the motel building for three hours. Time sheets of the Rickey company were introduced and they verified the job superintendent’s testimony. Plaintiff then (October 1960) went to work for the Jolly Elevator Company on the same motel construction project. The supervisor for this job testified that he hired plaintiff to assist a crew in the setting of a hydraulic piston. The crew had to dig a hole in the ground twenty-six feet deep, about one foot in diameter. The plaintiff was part of this crew using a twelve inch auger to drill the hole. Extensions to the auger shaft were added as the hole got deeper. Plaintiff would have to stand in one place and turn the auger clockwise and as the soil was quite hard it required “quite a bit of strength and strain to turn the auger.” When the auger filled with dirt it was pulled out of the hole and emptied. On this job he also was part of a three man crew that raised a twelve to fourteen hundred pound piston, 26 feet long, into a hatch. The piston was brought to the site on a roller, helped into position by manual labor. One end of it was lifted with a manually operated winch. The work supervisor described that work as heavy manual labor. One end of the piston was raised by the winch so far when the crew, with plaintiff, would handle it barehanded and slide it on the ground toward the hatch. The hoist would lift the top end some more and again the men would slide the bottom end closer to the hatch, and the process repeated until the piston was verticle and could be dropped into the hole. This witness said the plaintiff was a good worker and gave no indication of having back trouble.
A portion of plaintiff’s claim that he was suffering from pain might be accounted for by the testimony of Dr. Jacob L. Fischman, a urologist, who saw the plaintiff on referral on September 24, 1960. As defendants’ witness, he testified that plaintiff complained of backache. His diagnosis was urethritis, a venereal disease. He treated plaintiff and the condition was cleared up. The plaintiff first denied that Dr. Fischman told him what he had, but later acknowledged that the doctor had told him. The plaintiff did not inform Dr. Epstein of this condition.
Traumatic neurosis is compen-sable under the Louisiana Workmen’s Compensation Statute. However, before a claimant is entitled to recovery he must prove his claim by a preponderance of the evidence. A preponderance of evidence means a superiority of weight. Weight of evidence connotes credibility and influence. The preponderance of the evidence in this case is decidedly with the defendants. Accordingly, the plaintiff did not prove his case by a preponderance of the evidence.
For the foregoing reasons, the judgment of the district court is affirmed, appellants to pay all costs.
Affirmed.