SAVOY, Judge.
Plaintiff, as natural tutrix of her minor >. m, Thurmon Frazier, Jr., filed suit against her son’s employer, J. B. Mouser, the subcontractor of Foster Forest Products, Inc., and others, alleging that her son was totally and permanently disabled as a result of an accidental injury sustained by him during the course and scope of his employment with J. B. Mouser on July 23, 1959. Plaintiff alleged that her son was injured while loading pulpwood on a truck, when he attempted to lift a heavy stick of pulpwood; that as a result of said accident her son sustained a lumbosacral strain with nerve root compression in the low back area.
Defendants answered the suit admitting that Thurmon Frazier, Jr., was an employee of J. B. Mouser; that J. B. Mouser was a sub-contractor of Foster Forest Products, Inc.; that Thurmon Frazier, Jr. was injured in the course and scope of his employment; and, that the employment was hazardous. Defendants alleged further that they had paid to the said Thurmon Frazier, Jr. all the compensation to which he is entitled; that they had paid him at the rate of $26 per week from July 31 to August 27, 1959.
Plaintiff then filed a supplemental petition alleging that her son was suffering from a disabling traumatic neurosis precipitated, caused or brought about by the accidental injury sustained in the accident of July 23, 1959. Alternatively, plaintiff alleged that if her son was not suffering from a traumatic neurosis, that he still suffered from organic injuries to his back.
Defendants filed an answer denying generally all of the allegations of the supplemental petition filed by the plaintiff.
After a trial on the merits, the district court rejected plaintiff’s demands, holding that she had failed to prove her case by a preponderance of the evidence that her son, Thurmon Frazier, Jr., was disabled either by reason of organic disability or by traumatic neurosis. From the judgment of the district court plaintiff has perfected an appeal to this Court.
*719 The Court will first discuss the medical evidence as it relates to the organic disability of the minor, Thurmon Frazier, Jr.
Shortly after the accident in the instant case, Thurmon Frazier, Jr. was seen by Dr. Lloyd H. Murdock. After examining said minor, Dr. Murdock was of the opinion that he was suffering from a myofascial strain of the lumbosacral region.
Because of the complaints of young Frazier, Dr. Murdock referred him to Dr. Ed C. Simonton, an orthopedic surgeon residing in Shreveport, Louisiana. Dr. Simonton examined Frazier on August 26, 1959, and was of the opinion that Frazier was not incapacitated from performing work and had no residual disability. After receiving this report Dr. Murdock discharged Frazier from further treatment.
Frazier was next seen by Dr. Charles V. Hatchette, orthopedic surgeon in Lake Charles, Louisiana, on October 6, 1959. Dr. Hatchette was of the opinion that Frazier was disabled on that date. He felt that Frazier had a subacute lumbosacral strain and he recommended that Frazier be kept under observation for two or three months. He felt that there was a possibility of nerve root compression at the time. Dr. Hatch-ette saw Frazier a second time on December 28, 1959. After this examination, Dr. Hatchette was of the opinion that Frazier was ready to return to some type of duty, and he recommended that the patient find some type of work.
Frazier was next seen by Dr. Norman P. Morin, an orthopedic surgeon residing in Lake Charles, Louisiana, on January 5, 1960, at the request of defendants. After an examination of Frazier, Dr. Morin made the following statement:
“I found that he had completely recovered from the injury of July, 1959, with no residual orthopedic disability, and I felt he could return to his previous occupation without any jeopardy to his health.”
After the above examinations, Frazier still complained of pain to his back, and at the suggestion of Dr. Lloyd H. Murdock, he went to the Confederate Memorial Center in Shreveport, Louisiana, and was admitted for treatment in that institution on March 23, 1960.
The doctors at the Confederate Memorial. Center could find nothing organically wrong with Thurmon Frazier, but found that he had some underlying psychic problems.
Counsel for plaintiff sent Thurmon Frazier, Jr. to New Orleans to be examined by two psychiatrists, namely, Drs. Arthur M. Blood and Jacob M. Weisler.
Dr. Arthur M. Blood examined Frazier on the morning of October 19, 1960. After a complete psychiatric examination lasting approximately two and one-half hours, Dr. Blood was of the opinion that Frazier was suffering from psychoneurosis associated with trauma, and that the trauma received by Frazier on July 23, 1959, was the major precipitating event which caused the neurosis; that due to Frazier’s emotional condition he would not be able to perform his duties as a common laborer; that the duration of his disability was indefinite. The doctor found that Frazier had a disturbance of sleep, appetite and sexual functions. The doctor stated that his findings were based on his examination of the patient and what the patient told him.
Dr. Jacob M. Weisler examined Frazier on the afternoon of October 19, 1960. After an examination of the patient which' lasted approximately three hours, the doctor was of the opinion that Frazier was experiencing a type of anxiety reaction which was manifested as a conversion reaction consisting of pain in his low back area. In addition to this, he was having symptoms of a depression. The doctor said that the cause of the disability included the predisposition of Frazier, his personality and character formation that existed before the trauma. He said he felt the precipitating factor would be the injury Frazier described *720 as having happened in July, 1959. By “depression” the doctor stated he meant a feeling of sadness. He found that Frazier had experienced a rather marked weight loss due to a decrease in appetite. This is generally an important sign of depression. Also, that Frazier had experienced a loss of sexual potency and this is a second accepted sign of depression. That his general lack of motivation to do anything might be a part of the conversion reaction and might be considered a part of the depressive reaction. The doctor stated that the symptoms which he elicited from the patient were subjective symptoms; that his opinion was based on the questioning of the patient and the answers which the patient gave to him. On cross-examination he admitted that if the patient lied to him it would change his diagnosis.
In a written opinion, the trial judge found that plaintiff had not proven by a preponderance of the evidence that Frazier had not been able to resume his usual occupation after August 26, 1959, by reason of any physical disability as a result of the accident which occurred on July 23, 1959.
Dr. Hatchette, as stated before, first saw Frazier on October 6, 1959, and found he had muscle spasms on both sides of the spine but particularly on the left side in the low back region. He found Frazier to be disabled on that date and he recommended he be kept under observation for two or three months. On the second examination of the patient by Dr. Hatchette on December 28, 1959, he was of the opinion that Frazier was able to return to some type of duty and recommended that he return to work. In view of the testimony of Dr. Hatchette, this Court is of the opinion that Thurmon Frazier, Jr. should recover compensation from the time of the accident, namely, July 23, 1959, until the time he was last seen by Dr. Charles V. Hatchette on December 28, 1959, subject to a credit for compensation paid by defendants.
The trial judge also found that the plaintiff had failed to prove a continuing residual disability by reason of a traumatic neurosis or psychoneurosis of a conversion reaction type brought about by the accident of July 23, 1959. As a basis for his opinion, the trial judge stated that the symptoms elicited by the psychiatrists from Frazier were subjective symptoms consisting of complaints of back pain, loss of weight, diminished appetite, decreased sexual interest and general nervousness.
The trial judge was of the opinion that Frazier had misled the psychiatrists and had lied to them about his condition. As a basis for this he stated that when Frazier applied to Mr. Mouser, his employer, for work, he misrepresented his age so that he could obtain a job. That when Mr. Mouser later asked him for a social security number so that his wages could be paid, Frazier gave him a social security card belonging to Frazier’s brother. Also, that on August 24th when discovery deposition was taken, Frazier testified under oath that he had not used his brother’s card; that he admitted on the trial of the instant case that he was lying when he denied using his brother’s social security card. That when Frazier went to Confederate Memorial Center in Shreveport, he told the admitting officer that he had been injured the previous July while lifting a trunk, whereas in testifying in the instant case, he stated that he was injured while lifting pulpwood. That he also told the psychiatrists that he had sexual intercourse before the accident with Lillie Mae Carter, but that the evidence shows that she denied emphatically that she had relations with him before or after the accident. The record reflects that Frazier told the psychiatrists he had headaches whereas he never did mention this to the doctors who examined him before the psychiatrists did.
The evidence also shows that while Frazier told the psychiatrists he had lost considerable weight and that it was a gradual process, as a matter of fact he was weighed by Dr. Hatchette on the examination of October 6, 1959, and his weight at *721 that time was 152 pounds. On the trial of the case on November 1, 1960, Frazier testified he weighed 150 pounds. This indicates that his weight was stationary for a long period.
In the case of Williams v. Bituminous Casualty Corporation, (Ct.App., 2 Cir., 1961), 131 So.2d 844, the court said:
“We are in accord with the principle that for an expert medical opinion to be of value, the reality of the state of facts upon which it is based must be shown to exist. Keener v. Fidelity and Casualty Company of New York, La.App., 96 So.2d 509, 515. We are also in accord with the rule that claims predicated on traumatic neurosis or conversion reaction should be scrutinized with extreme care. Miller v. United States Fidelity and Guaranty Co., La.App., 99 So.2d 511.”
Because the diagnosis reached by the psychiatrists, Drs. Arthur M. Blood and Jacob M. Weisler, depended, according to them, on a large measure, upon the truth of the statements given to them by the patient, Frazier, and since they stated that if the statements given by Frazier were not truthful it would change their opinion, we are of the opinion that the trial judge was correct in finding that plaintiff should not recover for her minor son on the basis of traumatic neurosis or conversion reaction since the trial judge was of the opinion that the said Frazier had lied on many occasions and on many matters affecting his illness. We, therefore, conclude that the opinion of the trial judge on this phase of the case is correct.
For the reasons assigned, the judgment of the trial court is amended and recast to read as follows:
That there be judgment in favor of plaintiff, Sadie Frazier, as natural tutrix of her minor son, Thurmon Frazier, Jr., and against the defendants, awarding her compensation at the rate of $26 per week from July 23. 1959, to December 28, 1959, with legal interest at the rate of five per cent on each past due installment until paid, subject to a credit for compensation paid for a period beginning July 23, 1959, and ending August 27, 1959.
It is further ordered, adjudged and decreed that defendants pay all costs in both courts.
Amended and affirmed.