SAMUEL, Judge.
This is a suit for personal injuries and property damages allegedly sustained as a result of an accident involving two automobiles, one being driven by the plaintiff and the other by Clarence Schultz, a Jefferson Parish deputy sheriff. The defendants are Mr. Schultz, the liability insurer of his employer (the Sheriff of the Parish of Jefferson) and the sheriff’s excess coverage liability insurer. Following trial on the merits there was judgment in favor of plaintiff and against the three defendants, in solido, for pain and suffering, loss of wages, future loss of wages, and special damages in the total amount of $17,732.87. All of the defendants have appealed.
In this court appellants do not dispute liability. They contend only that the following judgment awards are either improper and should be disallowed or excessive and should be reduced: (1) an award of $1,079.75 for hospitalization in November, 1967 and January, 1969; (2) an award of $1,244 for medical services rendered by a treating physician, Dr. Villamarette; and (3) awards for loss of wages ($4,935) and future loss of wages ($5,000) based on a finding by the trial court that plaintiff was unable to perform his work duties after the accident. Plaintiff has answered the appeal seeking increases in the awards for future loss of wages and pain and suffering ($5,000).
The accident occurred on October 17, 1967. The defendant car struck the plaintiff automobile in the rear while the latter vehicle was stopped in obedience to a traffic light. Both the impact and the resulting damages were minimal.
At the time of the accident plaintiff was 63 years of age and employed as a clerk in the mortgage and conveyance office of the Clerk of Court for the Parish of Jefferson. His duties consisted of proofreading and photostating recently filed acts and inserting pages in the heavy mortgage and conveyance books (the record reveals each weighed 35 to 40 pounds). He was in poor health and under medical care for heart disease, chronic asthma, recurrent bronchitis and cervical osteoarthritis accompanied by cervical intervertebral disc degeneration.
On the basis of the medical testimony offered, the trial judge concluded plaintiff had sustained these injuries in the accident : a cervical strain, a lumbosacral strain and an aggravation of his cervical area arthritic condition. He returned to work immediately after the accident, continued working until he was hospitalized on November 15, 1967 and thereafter did not return to work. At the trial in September, 1969 he still complained of pain and inability to work.
The medical evidence in the record consists of the testimony of Dr. Hubert J. Vil-lamarette, a general practitioner and the principal treating physician, Dr. Jack L. Winter, an orthopedic surgeon and also a treating physician, Dr. Russell C. Grun-sten, an orthopedic surgeon, and Dr. Richard W. Levy, a neurosurgeon. The two medical experts first named were called by the plaintiff and the two last named were called by the defendants.
*813 Dr. Villamarette examined plaintiff the day after the accident. At that time he complained of pain in the neck and in the lumbosacral region. He was treated with pain medication, muscle relaxants, compresses, rest and diathermy during the remainder of October and early November. On November IS, 1967 he was admitted to a hospital and Dr. Winter was called as a consultant. Treatment was continued until April, 1968 when some improvement was noted and again he was referred to Dr. Winter for evaluation. Additional improvement was noted in May, 1969 but at that time he still had some muscle spasm in the neck. Plaintiff again was hospitalized on January 4, 1969 with chest pain, shortness of breath and pain in the left arm. In 1968 Dr. Villamarette began treating plaintiff for other problems which included indigestion, dizziness, headaches, inflammation of the stomach, a prostate condition, angina, colds and asthma. At the time of trial he had not been discharged from treatment in connection with injuries related to the accident.
Dr. Winter saw plaintiff on November 20, 1967 at the request of Dr. Villamarette. X-rays taken at the time revealed moderately severe degenerative arthritis in the cervical vertebral column with disc space narrowing and sclerosis. In this doctor’s opinion as a result of the accident plaintiff had sustained a soft injury to the neck in the nature of a muscle or ligamentous strain complicated by considerable arthritis involving bones of the cervical vertebral column. He recommended treatment and saw plaintiff three months later when some improvement was noted although there was some swelling in the superclavicular area at the base of the neck. Range of motion was somewhat more restricted than previously. The doctor felt plaintiff continued to have malfunction in the cervical area and the injury was complicated by moderate to moderately severe arthritis and disc degeneration of the neck. A cervical collar, which had been prescribed and used, was discontinued as possibly aggravating this condition. Exercises and use of a head halter traction were begun. Use of the cervical collar was later resumed and then again discontinued. There was no significant improvement in plaintiff’s condition although on July 30, 1969, his last visit, he was feeling considerably better.
Dr. Winter concluded plaintiff’s complaints were due to cervical osteoarthritis of moderate severity with accompanying cervical intervertebral disc degeneration associated with radiculitis involving at least the right arm and probably the left. He could not say with certainty whether the accident aggravated plaintiff’s pre-ex-isting condition. But because of his medical history the doctor considered he probably had significant aggravation of the preexisting degenerative arthritis and, on the basis of that conclusion, felt it was medically reasonable that the accident was a significant factor in his condition. However, he expressed no opinion as to the degree of plaintiff’s physical impairment because it was impossible to determine how much was due to osteoarthritis, how much to injury and how much to aggravation.
Dr. Grunsten performed a routine examination and took x-rays on March 19, 1968. In his opinion there was osteoarthritis of moderate degree in the neck area as well as osteoarthritic spur formations. He recommended a neurological examination, discontinuance of the cervical collar and a program to mobilize the neck because of the arthritic change and complaints of stiffness. While he agreed that a person with arthritic changes in the cervical area is more prone to be injured in that area and the prognosis for recovery is extended or prolonged, Dr. Grunsten did not feel the trauma sustained by plaintiff in the accident permanently aggravated his pre-exist-ing arthritic condition.
Dr. Levy performed a neurological examination and had x-rays made on November 26, 1968, finding moderately advanced arthritis of the back. In his opinion plain *814 tiff’s symptoms were not the result of injury or disease of the spinal cord, neck or nerve regions of the neck as concerned with neurological disability.
First addressing ourselves to plaintiff’s claim for an increase in quantum, after examining the cited cases relative to quantum and especially considering the difficulty of determining the extent of plaintiff’s condition caused or contributed to by the minor accident in suit as opposed to that resulting solely from his infirmities which were unrelated to the accident, we are of the opinion that under all of the above circumstances the award of $5,000 for pain and suffering does not constitute an abuse of the “much discretion” vested in the trial court in assessing such damages. Accordingly, we will not increase that award.[1]
Relative to appellants’ first contention, the hospitalizations of November, 1967 and January, 1969 were ordered by Dr. Villamarette. That doctor testified the 1967 hospitalization resulted from an adverse reaction to an injection plaintiff received for his neck pain in the doctor’s office. While it is true an EKG was performed and various tests administered in the hospital in connection with plaintiff’s heart condition, they were done because the doctor had to rule out the possibility of a coronary attack (due to a prior heart attack in 1958) before proceeding further with treatment for the neck pain. The hospitalization being necessitated because of the neck pain which resulted from the accident, the award for the 1967 hospitalization was proper.
However, plaintiff was admitted to the hospital in January, 1969 solely because of complaints of chest pain, shortness of breath and pain in the left arm. Although he did not have the hospital records before him, Dr. Villamarette testified he did not believe this hospitalization was related to the accident and the record contains no evidence to the contrary. Accordingly, the sum of $482.55 awarded for the 1969 hospitalization must be disallowed.
We are of the opinion that appellants’ second contention, relative to the award made for medical services rendered by Dr. Villamarette, is without merit. In the course of his testimony the doctor reviewed his bills and enumerated in detail the services performed. He did agree that six of the bills offered in evidence had no connection with the accident and the trial judge reduced the total award by those amounts. While the doctor admitted that on many of the visits he did consider and discuss some of the patient’s various ailments unrelated to the accident (the prior heart condition, bronchitis and asthma among other complaints), the treatment rendered was primarily for injuries incurred in the accident and no additional amounts were charged for such visits, i. e., the amounts charged would have been the same if the other infirmities had not been considered, discussed or treated. As the record contains no other evidence on the subject, the award of $1,244 for Dr. Villa-marette’s medical services was proper.
Finally, we address ourselves to appellants’ third contention, relative to the judgment awards for loss of wages and future loss of wages, and to that part of plaintiff’s answer to the appeal which seeks an increase in the award for future loss of wages.
As has been pointed out, following the accident on October 17, 1967 plaintiff worked only until he entered the hospital on November 15, 1967 and never returned to work thereafter. The record also reveals his employer paid plaintiff’s full salary of $470 per month until April 30, 1969. At that time, having completed the minimum number of years necessary for retire *815 ment, plaintiff retired for disability reasons and, beginning May 1, 1969, he received only a pension of $225.42 per month.
The trial court made no award for loss of wages from November 15, 1967, when plaintiff stopped working, to the time of his retirement on April 30, 1969 because he received full wages during that entire period. We are not presented with any issue relative to that question. However, the trial court did find that following the November, 1967 hospitalization plaintiff was not able to perform his work duties and the award made for loss of wages in the total amount of $4,935 represents plaintiff’s regular salary of $470 per month from May 1, 1969, when he began receiving his retirement pension, until March 13, 1970, the date on which he reached the compulsory retirement age of 65 under LSA-R.S. 42:691. In pertinent part, relative to the two issues of loss of wages and future loss of wages, that statute provides:
“ * * * any employee of the state of Louisiana, or any political subdivision thereof * * * who shall have attained the age of sixty-five years shall be separated from the public service by his appointing authority if such employee is eligible for retirement under * * * the retirement system of which he is a member. * * * In any case in which the appointing authority certifies that the continuance in service of the employee who shall have attained the age of sixty-five or over would be advantageous to the public service by reason of his expert knowledge and qualifications, such employee may be continued in the public service by his appointing authority beyond the age of sixty-five for periods of one year.” LSA-R.S. 42:691.
 Primarily because of the orthopedic problems with plaintiff’s neck, both Dr. Villamarette and Dr. Winter were of the opinion he could not perform his regular work duties due to pain and discomfort, particularly as those duties involved stoop-ping and lifting. Dr. Grunsten felt plaintiff’s duties as a clerk might aid in the mobility of the neck and therefore be beneficial. Dr. Levy expressed no opinion as to whether plaintiff could continue to work. As Drs. Villamarette and Winter, respectively a general practitioner and a specialist, were treating physicians and as Dr. Grunsten, a specialist, had seen plaintiff on only one occasion, the testimony of the former is entitled to greater weight than the latter.[2] Accordingly, we agree with the trial court’s conclusion of fact relative to inability to work subsequent to the November, 1967 hospitalization as a result of the accident. Plaintiff is entitled to the $4,935 award for loss of wages.
In this connection appellants further argue that if plaintiff is entitled to an award for loss of wages, they should be allowed to offset the amount of pension pay he received against the $470 per month they are condemned to pay. We do not agree with the argument. A tort-feasor is not entitled to have damages for loss of earnings reduced by pension payments made to the injured party from a collateral source to which the tort-feasor has not contributed.[3]
The only remaining issue is appellants’ contention that the $5,000 award for future loss of wages should be disallowed and plaintiff’s claim that the award should be increased so as to include his $470 monthly salary over a period of 12.47 years, his life expectancy under LSA-R.S. *816 47:2405. We find we must agree with appellants’ contention.
The award, for slightly less than plaintiff’s wages for one year, is based on the trial court’s conclusion that it was reasonable to assume he would be retained in his position by the Clerk of Court for that period of time after reaching the compulsory retirement age of 65 years. Under the above quoted portion of LSA-R.S. 42:691, plaintiff could have been continued in his employment beyond the age of 65 only if such a continuance would have been “advantageous to the public service”.
The burden of proving the certainty or legal probability of such continued employment was upon the plaintiff and he has failed to carry that burden. There is no evidence in the record to the effect that plaintiff possessed, in the words of the above quoted statute, “expert knowledge and qualifications” which would make his retention “advantageous to the public service.” Nor is there any evidence of any kind suggesting his employer would have attempted to retain him after he reached the age of compulsory retirement; the evidence before us indicates the contrary.
An immediate superior in the office testified from office attendance records, that plaintiff had been absent from work 62 days in 1965 and 51 days from the beginning of January to November, 1966. While some of these absences may have been in connection with election work the office performs, in most cases he was absent for other reasons, presumably because of poor health. More recent attendance records, including those from the beginning of November, 1966 through the date of plaintiff’s November, 1967 hospitalization, were not available because they had been lost during the process of moving the office to a new building.
Under these circumstances, particularly because of his unfortunate physical condition prior to the accident, we are unable to see how a continuance of plaintiff’s employment after 65 could have been advantageous to the public service and it appears highly unlikely that his employer would have attempted to continue his employment beyond the retirement age. Accordingly, the award of $5,000 for future loss of wages must be disallowed.
For the reasons assigned, the judgment appealed from is amended to reduce the award for special damages by $482.55, i. e., from $2,797.87 to $2,315.32, and to disallow the $5,000 award for loss of future wages, thus reducing the total award of $17,732.87 to $12,250.32. As thus amended, and in all other respects, the judgment appealed from is affirmed.
Amended and affirmed.

. See Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballanga v. Hymel, 247 La. 934, 175 So.2d 274; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.

. Williams v. American Marine Corporation, La.App., 212 So.2d 502; Stuart v. Anheuser-Busch Company, La.App., 185 So.2d 833; Nixon v. Pittsburgh Plate Glass Company, La.App., 161 So.2d 361; Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844.

. See Central Louisiana Tel. Co. v. Green-Snider Const. Co., La.App., 228 So.2d 73; Spizer v. Dixie Brewing Co., La.App., 210 So.2d 528; Doerle v. State, La.App., 147 So.2d 776.